RINCON *v.* RINCON

1. Parent and Child—Child Custody—Third Party—Best Interest—Presumptions.

   A presumption exists in a child-custody case that where there is a dispute between a natural parent and a third party over the child's custody that the child's best interests lie with his natural parents' exercise of custodial rights, absent a showing of the natural parents' unfitness or neglect or abandonment of the child; the trial court may not indulge in a comparison of the parental home with the third party's home.

2. Parent and Child—Child Custody—Friend of the Court Report—Evidence.

   A trial court may utilize the offices of the Friend of the Court in a child custody *habeas corpus* proceeding; however, the report of the Friend of the Court is not generally admissible as evidence, except by agreement of the parties.

Appeal from Wayne, George T. Martin, J. Submitted Division 1 October 12, 1970, at Detroit. (Docket No. 7852.) Decided December 10, 1970.

Complaint for *habeas corpus* by Johnny Salvador Rincon against Yolanda Rincon and Sergio and Estella DeLaGarza to secure custody of his son. Custody granted to plaintiff. Defendants DeLaGarza appeal. Affirmed.

REFERENCES FOR POINTS IN HEADNOTES

[1] 39 Am Jur, Parent and Child § 20.
[2] 39 Am Jur 2d, Habeas Corpus § 148.

*Schlussel, Lifton & Simon,* for defendants Sergio and Estella DeLaGarza.

Before: J. H. GILLIS, P. J., and DANHOF and MAHINSKE,* JJ.

DANHOF, J. In May 1964 Johnny Salvador Rincon divorced Yolanda Hernandez Rincon in Texas. Mrs. Rincon was granted custody of the only child of this marriage, a son born in February 1962, and named Refugio. Plaintiff was ordered to pay $10 per week child support. He made child-support payments totaling $210, but stopped making payments on the advice of his Texas counsel because he never heard from Mrs. Rincon and "didn't even know if the baby was getting the money or not". Instead, he opened a bank account in Refugio's name and made deposits in it. By May 14, 1969, the balance in this account was $2,087.69.

Following the divorce Mrs. Rincon moved several times, living in Illinois and Michigan as well as Texas. She gave birth to two illegitimate sons, Felix and Sammy. In April 1967, Mrs. Rincon and Felix became ill and were hospitalized. She asked Sergio and Estella DeLaGarza, who owned the restaurant where she worked and from whom she rented an apartment, to take care of Refugio and his half-brother Sammy. The DeLaGarzas agreed to take care of the two boys and took physical possession of them. The original understanding between Mrs. Rincon and the DeLaGarzas was that their care of the two boys was to be temporary in nature. Later, Mrs. Rincon asked the DeLaGarzas to adopt Refugio and Sammy.

In July 1968, the DeLaGarzas sought to adopt the two children. Their petition as to Sammy was

---

* Circuit judge, sitting on the Court of Appeals by assignment.

granted. However Mr. Rincon opposed adoption
of Refugio. The court treated the DeLaGarza peti-
tion as to Refugio as a petition to terminate Mr.
Rincon's parental rights. The petition was denied
on February 18, 1969.

On May 14 and 15, 1969, a hearing was held on
an order to show cause why a writ of *habeas corpus*
should not issue for the production of Refugio
Rincon. It was Mr. Rincon's position that since
Mrs. Rincon had demonstrated that she did not
want custody of Refugio by consenting to adoption,
the natural father should have custody.

On July 16, 1969, the court granted plaintiff's
complaint for a writ of *habeas corpus* and in pursu-
ance thereof granted custody of Refugio Rincon to
his father.

On July 18, 1969, a hearing on the motion for a
stay of proceedings pending the taking of an appeal
was adjourned one week because Mrs. Rincon had
taken Refugio and disappeared. On July 25, 1969,
the stay was denied. The whereabouts of Mrs.
Rincon and Refugio was still unknown to the court.

The DeLaGarzas have appealed, claiming three
errors. First, they argue that the court erred in
the manner in which it applied "the best interests
of the child" test to the factual situation. After a
lengthy hearing, the trial court found Mr. Rincon
and the DeLaGarzas to be fit for custody of Refugio
and Mrs. Rincon to be unfit for custody of him.
These findings are clearly supported by the record.
GCR 1963, 517.1. The trial court then correctly
cited *In re Ernst* (1964), 373 Mich 337, and *In re
Mark T* (1967), 8 Mich App 122, for the applicable
law which is that in deciding a dispute between a
natural parent and a third party it is presumed
that the child's best interests lie with his natural
parents' exercise of custodial rights absent the show-

ing of the natural parents' unfitness or their neglect or abandonment of the child and the trial court may not indulge in a comparison of the parental home with the proposed alternative.

Further, Mrs. Rincon took Refugio on or about July 17, 1969, and since then the DeLaGarzas have not seen him. This fact destroys the DeLaGarza argument that it is not in the best interest of the child for his father to take him from the stable home he has enjoyed with them. Refugio has not been in the DeLaGarza home for almost a year and a half.

The second issue stated is whether the court erred in denying the defendants' motion for a continuance in order to obtain a psychiatric evaluation of Refugio and to introduce expert testimony concerning that evaluation. This issue is moot. Defense counsel did obtain a written psychiatric evaluation which was submitted with the report of the Friend of the Court. The psychiatric report was favorable to the defendants' position and was unchallenged by the plaintiff. We hold that no prejudice resulted from the denial of the continuance. *McKay v. Black* (1967), 5 Mich App 711, holds that the granting of a continuance rests with the sound discretion of the trial court.

Lastly, the defendants argue that the trial court erred in considering the report of the Friend of the Court. GCR 1963, 712.14, permits the trial court to utilize the offices of the Friend of the Court in a *habeas corpus* proceeding such as this one, although the settled rule is that the report of the Friend of the Court is not generally admissible as evidence, except by agreement. *Bowler v. Bowler* (1958), 351 Mich 398; *Cunningham v. Cunningham* (1968), 14 Mich App 509. The record shows that defense counsel emphatically supported the investigation by

the Friend of the Court. The report was never admitted into evidence, but it is in the court file. Both counsel received copies of the report before the court gave its decision. No objection was made to the court's considering it. The trial judge stated:

"This is the basis for the statement that the home of the plaintiff, Johnny Rincon, appears to be altogether satisfactory and there has been no testimony to the contrary.

"In view of the testimony and the report that we received, the court is going to grant the order to show cause for the issuance of the writ of *habeas corpus.*"

As stated before in this opinion, the law presumes that the child's best interests lie with his natural parents' exercise of custodial rights absent a showing of the natural parents' unfitness or their neglect or abandonment of the child. *In re Ernst, supra; In re Mark T, supra.* During a full hearing, defendants failed to show that plaintiff was unfit to have custody of Refugio or that he had neglected or abandoned him. The defendants having failed to rebut the presumption in favor of plaintiff, the trial judge was required by the case law of this state to decide in favor of the plaintiff. Thus, the trial court's reliance on the Friend of the Court's report was not prejudicial. See *Brugel v. Hildebrant* (1952), 332 Mich 475, 484, and *Cunningham v. Cunningham, supra.*

Affirmed.

All concurred.